NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0007n.06
Filed: January 4, 2006

No. 04-1892

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

KEVIN MITCHELL and BARBARA MITCHELL,

    Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
WESTERN DISTRICT OF
MICHIGAN

_____/

BEFORE:    MERRITT, MARTIN, and COLE, Circuit Judges.

The United States appeals the district court's grant of Barbara Mitchell's and Kevin Mitchell's motion to suppress evidence. For the forgoing reasons, we AFFIRM the district court's judgment granting the Mitchells's motion to suppress.

I.

During the summer of 2003 a team of law enforcement officers investigating drug trafficking in the Grand Rapids, Michigan area focused upon an alleged drug dealer named Darrell Mitchell. Darrell is the brother of Kevin Mitchell and the son of Barbara Mitchell. On August 6, 2003, the police recorded a telephone conversation between a confidential informant and Darrell Mitchell during which Darrell said that he would get drugs for the informant from his stash house. The stash

house was known to the informant to be an apartment located at 3676 Camelot Drive. Following

this conversation, the police observed Darrell enter the apartment building and exit it carrying a

package. The police then saw Darrell give the package, which was later found to contain cocaine,

to the confidential informant. The police arrested Darrell and took him to the Kent County Jail.

While Darrell was being brought into the jail, his brother Kevin was being released from jail on

unrelated charges. The two observed each other but were not able to speak to one another.

After Darrell was arrested, several police officers continued to conduct surveillance on the

Camelot apartment building while a search warrant was being obtained to search the apartment.

Detective Richard Brown and Detective Peter Gerkin remained parked in an unmarked car hidden

outside of the building. Approximately one hour after Darrell was brought to jail, Detectives Brown

and Gerkin observed a Chrysler Concorde pull up to the Camelot apartment building. The car was

driven by a black female, later determined to be Barbara Mitchell, and there was a black male, later

determined to be Kevin Mitchell, sitting in the passenger seat. The two exited the car and went into

the apartment building. Detectives Brown and Gerkin informed two other officers in the area,

Detective Michael Mesman and DEA Agent Scott Syme, of this development and the two officers

came to the scene.

Several minutes later, the officers observed Barbara and Kevin Mitchell leave the apartment

building carrying several bags and place the bags in the trunk of their car. At this point the officers

decided to approach the vehicle. Detectives Brown and Gerkin pulled up beside the vehicle, while

Detective Mesman and DEA Agent Syme approached the passenger side of the vehicle on foot. All

four of the officers were wearing plain clothes and were carrying concealed weapons. The officers

showed Kevin and Barbara their badges and requested that Kevin and Barbara turn off the car and exit the vehicle. Kevin was taken to the front of the car to be questioned while Barbara was taken to the rear of the car.

DEA Agent Syme asked Kevin what was in the trunk of the car to which Kevin replied "stuff." When asked what kind of stuff, Kevin stated it was "just some stuff." Concurrently, Detective Brown asked if there was anything in the vehicle that the officers should know about and Barbara responded that she knew about the drugs but that she did not know about the guns. Detective Brown requested permission to search the car and Barbara replied "go ahead." The officers's entire conversation with Kevin and Barbara lasted between thirty seconds and two to three minutes. The officers then searched the car and found several firearms and ammunition along with cocaine and marijuana in the bags in the trunk of the car. Kevin and Barbara were later arrested and the Camelot apartment was searched pursuant to a search warrant.

On August 12, 2003, Kevin and Barbara Mitchell were indicted on various drug and firearm related charges stemming from the search of their car and the Camelot apartment. Both Kevin and Barbara filed motions to suppress their statements to police outside their car on the grounds that the officers's custodial interrogation violated *Miranda v. Arizona*, 384 U.S. 436 (1966).[1] The district court held an evidentiary hearing regarding the suppression motions. The district court granted Kevin and Barbara Mitchell's motion to suppress their statements on the grounds that the officers failed to provide Kevin and Barbara Mitchell with a *Miranda* warning and "[t]he circumstances []

---

[1] The Mitchells also sought to suppress other evidence but the district court denied the motion and it is not a subject of this appeal.

indicate that Kevin and Barbara Mitchell were in custody when the police stopped and began questioning them." The government then appealed the district court's decision.

II.

The government alleges that the district court erred in granting the Mitchells's motion to suppress on the grounds that no *Miranda* warning was necessary because the Mitchells were not in custody when questioned by police. When reviewing a motion to suppress, we review a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Crossley*, 224 F.3d 847, 86 (6th Cir. 2000). The question of whether a defendant was "in custody" is a mixed question of fact and law and is thus reviewed de novo. *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.), *cert. denied*, 523 U.S. 1122 (1998).

*Miranda* requires police to issue warning prior to conducting a custodial interrogation, which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In determining whether a defendant is in custody for purposes of *Miranda*, a court "must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *Yarborough v. Alvarado,* 541 U.S. 652 (2004)(quoting *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)). Specifically, the Court has indicated that "[t]he *Miranda* custody inquiry is an objective test" which involves "two discrete inquiries": (1) "what are the circumstances surrounding the interrogation"; and (2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate

the interrogation and leave." *Id.*

Based on the Supreme Court's test for determining the custody inquiry, we conclude that the Mitchells were in custody at the time of their interrogation. The Mitchells were about to drive away from the apartment building when the police officers's vehicle pulled up along side the Mitchells's car causing it to stop. The four officers then approached the vehicle, with two officers approaching either side of the vehicle. The officer displayed their badges and informed the Mitchells that the officers were involved in a drug trafficking investigation. The officers ordered the Mitchells to exit the vehicle and separated them so they could not confer with one another. Kevin was questioned at the front of the car while Barbara was questioned at the back of the car.

Given these circumstances, we conclude that a reasonable person in Barbara or Kevin Mitchell's position would not have felt at liberty to terminate the interrogation and leave. Although the police did not display their guns or threaten the Mitchells, the officers's stop of the Mitchells's car and the quantity of officers involved in the stop would certainly have been intimidating to a reasonable person. Moreover, the officers's statements that they were questioning the Mitchells in connection with a drug trafficking investigation, their orders that the Mitchells exit the vehicle and their questioning of the Mitchells in separate locations, all suggest an interrogation environment in which a reasonable person would not have felt free to end the questioning and walk away. As a result, we conclude that the Mitchells were in custody and thus the officer were required to provide the Mitchells with a *Miranda* warning prior to the interrogation. Because the officer failed to provide such a warning, we conclude that the Mitchells's constitutional rights were violated and that the district court properly granted the Mitchells's motion to suppress.

III.

For the reasons stated above, we AFFIRM the district court's grant of the Mitchells's motion

to suppress.